IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARILYN HOWELL,                                         CV-04-1544-TC

　　　　　　Plaintiff,                                  OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

　　　　　　Defendant.

---

DAVID LOWRY
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223

　　　　Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon

NEIL EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

JOANNE E. DANTONIO
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

Coffin, Magistrate Judge:

## BACKGROUND

Plaintiff, Marilyn Howell (Howell), brings this action for judicial review of a final

decision of the Commissioner of Social Security denying her application for disability insurance

benefits (DIB) under Title II of the Social Security Act (the Act). 42 U.S.C. § 1383(c)(3). This

court has jurisdiction under 42 U.S.C. § 405(g).

Howell filed for DIB on August 31, 2001, alleging disability beginning on May 14, 2000,

due to depression and unspecified additional impairments. She was 57 years old at the time of

the Administrative Law Judge's (ALJ's) final decision denying benefits. She has a bachelor of

arts degree in geography and a nursing degree. She last worked as a nurse, after her alleged onset

of disability, which the ALJ considered an unsuccessful work attempt. She has also worked as a

cook, housekeeper and a dishwasher.

On appeal to this court, Howell claims the ALJ erred by: (1) failing to fully advise her of

her right to be represented by an attorney at the administrative hearing; (2) failing to develop the

record; (3) finding that she had no "severe" impairments; (4) failing to provide legally sufficient

reasons to discredit Howell's testimony; and, (5) failing to provide legally sufficient reasons to discredit lay witness testimony.

For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9ᵗʰ Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9ᵗʰ Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9ᵗʰ Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9ᵗʰ Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9ᵗʰ Cir. 2001).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512. Each step is potentially dispositive.

Here, at step one, the ALJ found Howell had not engaged in substantial gainful activity since her alleged disability onset date. See 20 C.F.R. § 404.1520(b).

At step two, the ALJ found that Howell did not have any "severe" impairments, as defined by the regulations. See 20 C.F.R. § 404.1520(c). Thus, the ALJ determined that Howell was not disabled at step two, and therefore did not perform the remaining steps of the sequential evaluation.

## DISCUSSION

### I.    The ALJ properly permitted Howell to represent herself at the hearing.

Howell contends the ALJ erred by allowing her to represent herself at the hearing because she did not "knowingly and intelligently" waive her right to representation. She argues that she was provided with insufficient notice of her right to representation, and the reasons and benefits of having a representative at the hearing.

The "Notice of Hearing" paperwork sent to Howell prior to the hearing stated, "If you want to have a representative, please get one right away." The ALJ offered to reschedule the hearing in order to allow Howell to secure representation. However, Howell explained that she had consulted an attorney, but he "decided he couldn't win," and the next attorney she called did not return her message. The ALJ told Howell he knew of many attorneys in the Medford area

Page -4- OPINION AND ORDER

who do social security work, and asked her if she wanted an opportunity to contact one of them.

Howell stated that it would be "futile" to do so, and that she didn't want to reschedule because

she wanted to have her hearing before the winter weather arrived.

Civil litigants, unlike criminal defendants, do not have a constitutional right to

appointment of counsel. U.S. CONST. AMEND. VI. While attorneys and non-attorneys may serve

as representatives in Social Security Administration hearings, these proceedings are designed to

allow the claimant to represent herself. 42 U.S.C. §§ 406(a), (c); see also 20 C.F.R. §§

404.1700-1710. "Lack of counsel does not affect the validity of the hearing and hence warrant

remand, unless the claimant can demonstrate prejudice or unfairness in the administrative

proceedings." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981).

Howell has made no showing of prejudice or unfairness at the hearing, or even alleged

that her lack of representation precluded her from providing any material information. To the

contrary, the record reveals that the ALJ informed Howell of her right to representation prior to,

and at the commencement of the hearing, and that Howell clearly understood this right (manifest

by her consultation with an attorney prior to the hearing who apparently declined to represent

her). Nevertheless, Howell stated that she wanted to go forward with the hearing unrepresented.

The ALJ was not required to obtain a "knowing and voluntary" waiver from Howell because she

did not have a constitutional right to appointment of counsel. See Iowa v. Tovar, 541 U.S. 77, 81

(2004).

II.     The ALJ's step two finding was supported by substantial evidence.

Howell contends the ALJ erred at step two of the sequential evaluation by finding that she

had no severe mental or physical limitations. In order to progress beyond step two of the five-

step sequential evaluation, a disability claimant must prove (a) that she has a "medically determinable physical or mental impairment," and (b) that it is "severe," as defined by the regulations. See 20 C.F.R. § 404.1520(c); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer medical evidence from "acceptable medical sources" listed in 20 C.F.R. § 404.1513. This evidence should include: (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed, and the claimant's response, and prognosis; and (6) a statement about what the claimant can still do despite her impairment(s) "based on the acceptable medical source's findings." See 20 C.F.R. §§ 404.1508, 404.1512.

To show an impairment is "severe," the medical evidence must establish that it significantly limits the claimant's ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. Id.; see also SSR 96-3p.

On her application for DIB Howell alleged that she became disabled on May 14, 2000, due to difficulty finding work, inability to keep a job, and depression. The ALJ found no medical records corresponding with Howell's alleged onset date, but he noted that the date coincided with Howell's termination from her last nursing job allegedly due to her inability to assimilate new nursing techniques. The ALJ noted that the difficulty finding work does not equate to a disability.

The most contemporaneous medical evidence with Howell's alleged onset date was a November 30, 2000, chart note reflecting that Howell complained of cold and sinus symptoms following her return from a trip to Europe. Helen Kilzer, M.D., prescribed Sudafed. Howell told Dr. Kilzer that she had been unemployed since May, but was looking for work.

Prior to that, Howell had last seen Dr. Kilzer one year earlier, in November, 1999, for a follow-up appointment. On that visit Howell reported marked improvement with her anxiety disorder, and no further abdominal pain. She had reunited with her husband, and was working as a nurse at the Amber Valley Care Center, where she had just gotten a raise.

In August, 1999, Howell saw Dr. Kilzer to follow-up with past reports of anxiety, abdominal pain, a lesion on her tongue, right ear pain, and scratches on her back. Howell reported improvement with each of these issues, which were noted to be minor. Howell reported being excited about reuniting with her husband, indicating that they were planning on purchasing a large home in Pendleton, and keeping a gardener and a housekeeper. Dr. Kilzer opined that moving back with her husband would likely result in an increase in stress for Howell, particularly because the husband's "recent significant other" would be a few doors down.

In addition to the above, the ALJ considered the May 30, 2002, consultative evaluation performed by Chris Arthur, M.D. Dr. Arthur diagnosed Howell with a learning disorder, and a secondary diagnosis of dysthymia with a Global Assessment of Functioning (GAF) score of 60. Noting that she had been dyslexic all her life and yet was able to earn two bachelor degrees, Dr. Arthur did not find that Howell suffered from significant work-related limitations from dyslexia. Instead, he opined that because nursing is a highly technical profession, Howell should take a refresher course to update her skills, or else "retrain for a less technical field...".

At the hearing Howell presented recent medical records documenting complaints of pain in her feet and elbow, diagnosed as plantar fasciitis and medial epicondylitis. Her elbows improved with treatment, and she was prescribed orthodics for her feet. There is no evidence in the record that either of these impairments were expected to last for a continuous period of at least 12 months, or that they caused more than minimal work-related limitations.

Based on this record, the ALJ found that although Howell does suffer from the medically determinable impairments of dyslexia and dysthymia, she failed to meet her burden of proving that these impairments have more than a minimal affect on her ability to perform basic work-related activities. Therefore, the ALJ found that Howell does not have any "severe" impairments, as defined by the regulations.

In her reply brief Howell contends she has the following severe impairments: dysthemia, sleep apnea, insomnia, osteoporosis of the left hand, diverticulosis, and dyslexia. As evidence of her alleged sleep apnea Howell points to a June, 1999, chart note written by Dr. Kilzer, stating "[Howell] has seen Dr. Simon who apparently believes that she has sleep apnea syndrome and has her scheduled for a sleep study next month." Ironically, Howell argues that there is "no evidence [her] sleep apnea disappeared in less than 12 months." Yet there is no evidence that Howell was even diagnosed with sleep apnea- only that she reported to Dr. Kilzer that Dr. Simon wanted to test for it. Further, even if Dr. Simon had diagnosed sleep apnea, a diagnosis alone would not entitle her to DIB. See 20 C.F.R. § 404.1521(a).

Similarly, Howell points to exam notes from March, 1999, in which Dr. Kilzer notes an "impression" of osteoporosis, and an "assessment" of "sigmoid diverticulosis- inactive." There are no records of treatment for this condition. Nevertheless, Howell again argues that there is no

evidence that these impairments "have vanished or are totally controlled by medication." She

adds that there are no findings showing that her depression, anxiety and dysthemia have

disappeared either. This argument is unavailing for the same reason as above- the burden was on

Howell to disclose all medical records relating to her alleged impairments and to prove that they

significantly limited her ability to perform work-related activities, not the other way around.

Finally, Howell argues that even if the ALJ correctly determined that none of her

medically determinable impairments, in isolation, were severe, he still failed to consider the

combined effect of her impairments on her ability to function. However, pursuant to SSR 96-8P,

the ALJ is only required to consider the combined effect of a claimant's impairments when

assessing the claimants residual functional capacity (RFC). The RFC assessment is performed

only if the ALJ continues past step three of the sequential evaluation. See 20 C.F.R. §§

404.1520(e), 404.1545. Here, the ALJ reached his disability determination at step two of the

sequential evaluation, so he was not required to perform an RFC assessment, or to consider the

combined effect of Howell's alleged impairments.

## III.     The ALJ properly discredited Howell's testimony.

Howell alleges the ALJ ignored her testimony, and therefore rejected it without giving

legally sufficient reasons. The ALJ is not required to credit every allegation of disabling pain or

else disability benefits would be available on demand. See Fair v. Bowen, 885 F.2d 597, 603 (9th

Cir. 1989). However, if the ALJ determines that a claimant is not credible he must give specific

reasons, supported by substantial evidence in the record, indicating that he has not arbitrarily

discredited a claimant's testimony. See Thomas v. Barnhart, 278 F. 3d 947, 958-59 (9th Cir.

2002).

In assessing a claimant's credibility, the ALJ may consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the objective medical evidence; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ did not directly discuss Howell's subjective reports. However, contrary to Howell's contention, the ALJ actually credited most of her testimony. At the hearing, the ALJ asked Howell why she lost her last job as a nurse, she replied:

> Well, I – – my experience is employers don't really tell you the truth because they can fire you for no reason and they get away with it so it could have been anything, it could have been age discrimination, it could have been – – they said something about, and they didn't explain it – – a fax to a doctor and they said something about my IV skills, which I made very clear to them that they were not up-to-date and that I would need some training before I got exposed to, you know, something and I worked a swing shift so, of course, it's, you know, in the dark of night that all this is presented to me. So I did it the old fashioned way, and safe to the patient, and they didn't happen to like it, I guess.

The ALJ then asked Howell to tell him why she felt she couldn't work anymore. She replied:

> Because they won't hire me and, if they do, they obviously fire me so there's something going on that they're not telling me so I can't correct it. I don't know. I have dyslexia but there are, I'm sure, plenty of nurses that are dyslexic, diagnosed or undiagnosed that, you know, manage.

Finally, when the ALJ asked Howell if she envisioned herself working again in the future, she responded:

I sure hope so because I just love geriatrics. That's my thing, is nursing homes and geriatrics. To have 80 grandparents, seventh heaven. It's great. But I don't know, you know, if I'll be able to. I mean if they don't hire me, I can't.

In his written opinion, the ALJ noted that dyslexia was a lifelong learning disorder which had not prevented Howell from obtaining two college degrees and working as a nurse for a number of years. This court infers that the ALJ accepted Howell's own admission that she could not work as a nurse because her skills were out of date, but that her dyslexia did not prevent her from doing other work. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989)(the court may draw specific and legitimate inferences from the ALJ's opinion). Further, Howell's admissions about her wide-range of activities of daily living (from housework to international travel) are consistent with the ALJ's finding that Howell does not have work-related functional limitations.

Howell's instant argument that she could not keep a job due to dyslexia and other alleged impairments is clearly contrary to her testimony at the hearing that she was not able to work as a nurse because her skills were outdated, but she wanted to work at a nursing home in the future. Howell never claimed she was unable to perform other work outside of nursing.

Moreover, even if the ALJ improperly rejected Howell's subjective pain complaints to some extent , the error was harmless. See Batson v. Commissioner, 359 F.3d 1190, 1197 (9th Cir. 2004). Absent evidence of a medically determinable impairment reasonably expected to last for a continuous period of at least 12 months, significantly limiting her ability to perform work-related activities, Howell would not be entitled to DIB, regardless of what she alleged. See, e.g., 20 C.F.R. §404.1529.

**III.    The ALJ properly evaluated lay witness testimony.**

Howell alleges the ALJ ignored the written statement of Emile Gingas, which she argues

corroborates her allegation that she has sleeping difficulty and that she takes medication.

The ALJ is required to account for lay witness testimony, and if he rejects it, to provide

germane reasons for doing so. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). However,

the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v.

Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

On a third party disability worksheet, Mr. Gingas indicated that Howell has trouble

sleeping, but that she gets seven hours of sleep per night, and that she does not take naps during

the day.  He also indicated that Howell takes medication that helps her, and that it does not have

any negative side effects.  He also profiled a robust list of daily activities Howell engages in,

such as shopping, socializing, cooking, cleaning, working-out at a gym three times a week,

gardening, using the internet, and playing with pets.  He described her typical day as follows:

> She turns on the TV and the computer.  She goes out for breakfast reads the paper.  Goes
> to the gym.  Goes on-line and chats with anyone who will listen.  Her search for a man is
> what consumes most of her time.

In sum, Mr. Gingas' statement corroborates the ALJ's finding that Howell does not have

work-related functional limitations.  Although the ALJ did not expressly credit Mr. Gingas'

testimony, this court infers that the ALJ did not reject it.  See Magallanes, 881 F.2d at 755.

**V.    The ALJ fulfilled his duty to develop the record.**

Howell alleges the ALJ failed to develop the record in two respects.  First, she contends

that despite Dr. Kilzer's refusal to respond to prior inquiries by Disability Determination Services

(DDS), the ALJ should have summoned her to the hearing or ordered her to complete

interrogatories in order "to clarify plaintiff's impairments." Second, Howell alleges the ALJ

should have ordered "a consultative exam with testing to fully assess the presence and

ramifications of all of plaintiff's impairments."

I find no merit to Howell's argument. The regulations plainly state that the burden of

proving disability is on the claimant. 20 C.F.R. § 404.1512. The ALJ "will make an initial

request for evidence from [the claimant's] medical source" and if the medical source has not

responded within 20 days of the request, "will make one followup request to obtain the medical

evidence necessary to make a determination." 20 C.F.R. § 404.1512(d). If the evidence provided

by the medical source "contains a conflict or ambiguity" that cannot be resolved by other

evidence in the record, then the ALJ will re-contact the medical source for clarification. Id. at

404.1512(e); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). If the medical

source does not provide clarification, then the ALJ has the option of ordering a consultative

evaluation to resolve the conflict or ambiguity. Id. at 404.1512(f).

Here, there was no conflict or ambiguity in acceptable medical source records regarding

Howell's alleged impairments, but since very little medical evidence was available, DDS

attempted to recontact Dr. Kilzer. However, since Dr. Kilzer did not respond, the ALJ ordered a

consultative medical examination, which Howell failed to attend. On this basis alone the ALJ

could have ended the inquiry. See 20 C.F.R. § 404.1518. However, Howell was given a second

chance and on May 30, 2002, Chris Arthur, M.D., performed the exam, as noted above, and

concluded that Howell was not disabled. No further development of the record was necessary.

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is

DISMISSED.

IT IS SO ORDERED.

DATED this _10_ day of January, 2006.

Thomas M. Coffin
United States Magistrate Judge